UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL E. WHITFIELD,

       Plaintiff,

v.                                   Case No. 1:13-cv-206
                                       Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

## OPINION

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

       Plaintiff was born on December 10, 1950 (AR 159).[1] He alleged a disability onset date of August 31, 2005 (AR 159). Plaintiff completed some college and had previous employment as a cab driver, floor care technician, dishwasher, machine operator, donut fryer and auto detailer (AR 33-34, 69, 164, 167).[2] Plaintiff identified his disabling conditions as chronic pain in the upper back, neck and shoulders, with periodic numbness in his left hand (AR 163). Due to this condition, plaintiff has a very limited ability to lift and stand for long periods of time (AR 163). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on January 30, 2009 (AR 16-24).

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Plaintiff reported to the agency that he completed two years of college (AR 167). However, he testified at the administrative hearing that he completed one or two semesters of college (AR 33-34).

Plaintiff appealed the ALJ's decision, and the district court reversed and remanded it pursuant to sentence four of 42 U.S.C. § 405(g) with the following instructions:

> On remand, the Commissioner should re-evaluate the medical evidence, clarify the weight given to Dr. Visser's opinions and explain which, if any, of those opinions are being used to establish plaintiff's RFC. If the Commissioner adopts some or all of Dr. Visser's opinions and determines that plaintiff has a more restrictive RFC, then he should re-evaluate plaintiff's disability claim accordingly.

*See Whitfield v. Commissioner of Social Security*, No. 1:09-cv-1171 (Opinion) (W.D. Mich. March 28, 2011). On remand, the ALJ reviewed plaintiff's claim and entered a decision denying benefits on November 4, 2011 (AR 500-10). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not

undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

As an initial matter, the ALJ explained the nature of the proceedings on remand, stating that "[p]ursuant to the District Court remand order, the Appeals Council has directed the undersigned to re-evaluate the medical evidence, clarify the weight given to Dr. Visser's opinions and explain, which, if any, of those opinions are being used to establish the plaintiff's residual functional capacity" (AR 500). The ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 31, 2005 and that he met the insured status requirements under the Act through December 31, 2010 (AR 502). Second, the ALJ found that plaintiff had a severe impairments of degenerative disc disease of the cervical spine, left upper extremity radiculopathy post C4-C5 cervical fusion, left ankle sprain remedied by orthotic, and substance abuse (AR 502). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 503-05). Specifically, the ALJ found that plaintiff did

not meet the requirements of Listing 1.04 (disorders of the spine), 12.04 (affective disorders) and 12.09 (substance addiction disorders) (AR 503-05).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that involves lifting up to 20 pounds occasionally, and lifting and/or carrying up to 10 pounds frequently; standing or walking for approximately 6 hours per 8-hour workday and sitting for up to 6 hours per 8-hour work day with normal breaks; occasional climbing of ramps or stairs, never climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; only occasional rotation, flexion or extension of the neck; occasional handling with non-dominant left upper extremity; and occasional overhead reaching bilaterally (SSR 96-8p).

(AR 505).

In addition, the ALJ found that "[t]he claimant is capable of performing past relevant work as a machine operator and donut fryer," work which did not require the performance of work-related activities precluded by his residual functional capacity (RFC) (AR 509). While the ALJ stated that plaintiff could perform both types of work, his decision only addressed evidence related to plaintiff's past work as a machine operator (AR 509-10). This led the ALJ to determine that plaintiff was not under a disability, as defined in the Social Security Act, from August 31, 2005 (the alleged onset date) through November 4, 2011 (the date of the decision) (AR 510).

### III. ANALYSIS

Plaintiff raised six issues on appeal:

**A.** **The ALJ erred by not giving proper weight to the opinion of plaintiff's treating and consulting physicians. Had he given their opinions proper weight, 20 C.F.R., Pp. 2, Subpart P, Rule 202.4 would have dictated a finding of "disabled."**

1.      **Ireneo Y. Diaz, M.D.**

Plaintiff contends that the ALJ failed to give proper weight to the opinions of his treating physician, Dr. Diaz, as set forth in a "Medical Source Statement of Ability to do Work-Related Activities" dated September 12, 2011 (AR 958-964).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See*

*Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d 284 at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Diaz expressed the following opinions in his statement. Plaintiff could lift and carry up to 10 pounds frequently and 20 pounds occasionally (AR 958). He could sit for eight hours, stand for one hour and walk for one hour without interruption (AR 959). In an eight-hour workday, plaintiff could sit for eight hours, stand for two hours and walk for two hours (AR 959). The doctor found that while plaintiff could use his right hand "continuously" for fingering, he could only "frequently" use his right hand for activities such as reaching (overhead), reaching (other), handling, feeling, pushing and pulling (AR 960). The doctor found that plaintiff greater limitations with his left hand, and could only "occasionally" use that hand for such activities (AR 960). Plaintiff could never climb ladders, climb scaffolds, stoop or crouch (AR 961). He could occasionally climb stairs, climb ramps, balance, kneel and crawl (AR 961). Plaintiff could operate foot controls continuously with his right foot but only occasionally with his left foot (AR 960). The doctor further stated that

plaintiff would have problems looking over his head and stated that an MRI from March 29, 2006 confirmed that plaintiff had degenerative disc disease with spinal stenosis (AR 963). Dr. Diaz did not refer to any clinical finding or test other than the MRI.

The ALJ evaluated Dr. Diaz's opinions as follows:

> [L]imited weight has been afforded to the residual functional capacity assessment completed by Ireneo Diaz, MD and Lee Papendick, PA-C, who assigned reduced standing and walking limitations. It is noted that these opinions are conclusory, and do not contain any type of explanation of the medical findings which would support such extreme limitations. Further, these clinicians appear to limit plaintiff's right upper extremity function (Exhibit 16F/3) absent any history of treatment, diagnosis of, or even complains [sic] of right upper extremity problems. Further, the results of the physical examination, which correlate with this functional capacity assessment, do not contain any objective examination findings relative to either the claimant's legs or feet (Exhibit 18F/5-6). Thus, this particular opinion is over broad and lacks a medical foundation.

(AR 507). Based on this record, the ALJ gave good reasons for assigning limited weight to Dr. Diaz' opinions as lacking a medical foundation. The doctor's opinion contained conclusory statements not supported by objective criteria or documentation. *See Buxton*, 246 F.3d at 773. Accordingly, plaintiff's claim of error is denied.

### 2. Bryan Visser, M.D.

Dr. Visser performed a consultative examination of plaintiff as requested by plaintiff's counsel. The Court previously summarized Dr. Visser's opinions as follows:

> Dr. Visser examined plaintiff on October 27, 2008, and diagnosed the following conditions: left upper extremity weakness which has a clinical appearance of a left C5 radiculopathy; neck pain; status post C4-C5 fusion; history of polysubstance abuse; history of hepatitis C; and history of left foot and ankle pain secondary to calcaneal fracture (AR 408). Based on these conditions, the doctor determined that plaintiff had the following limitations:

> > Because of his calcaneal fracture, he is unable to participate in a job that requires frequent walking or prolonged standing.

In regard to his upper extremity pain, he needs to avoid a job that requires any type of vocational or greater neck flexion, repetitive neck rotation as well as greater than occasional left hand use.

(AR 408).

Dr. Visser also gave a statement on November 24, 2008, which provided additional details regarding plaintiff's limitations (AR 409-11). In this statement, the doctor noted: that plaintiff's left upper extremity weakness appeared to be left C-5 radiculopathy; that plaintiff had limited range of motion and pain in his cervical spine related to the fusion at C4-5; and that he had a major limitation due to the calcaneal fracture in his left foot, which affected "his ability to walk or stand for any significant period of time" (AR 409). The doctor based his opinion on plaintiff's history, subjective complaints, previous x-rays and range of motion studies performed during the examination, finding that plaintiff's subjective complaints to be consistent with the clinical findings (AR 409). Dr. Visser opined that if plaintiff "was on his feet for more than three hours a day . . . he would have a significant increase in his ankle and foot pain" (AR 410). Based on these findings, the doctor would limit plaintiff's standing, walking, climbing and crouching to three hours or less in an eight hour workday because those activities "will cause significant stress on his ankles" (AR 409-10). The doctor also explained that plaintiff needed "to avoid any type of job that requires prolonged or frequent neck flexion and frequent prolonged neck rotation;" that "any neck rotation" would cause problems; and that plaintiff "needs to minimize the use of his left upper extremity" (AR 410). The doctor clarified that plaintiff should use his left hand 1/3rd of an eight-hour workday or less (AR 410). The doctor also opined that plaintiff's left upper extremity should be limited to lifting a maximum of 15 pounds, with frequent lifting of four pounds or less, with the ability to lift 25 pounds "rarely" with both upper extremities (AR 410-11). Finally, the doctor testified that plaintiff could have irritated the nerve root and had some "jamming of the facet joints" causing significant pain above and below the level of the fusion when he fell on some ice in 2006 (AR 411).

*Whitfield*, No. 1:09-cv-1171 (Opinion at pp. 5-6).

The ALJ addressed Dr. Visser's opinions on remand as follows:

Per the District Court Order, the undersigned has reconsidered the opinions proffered by Dr. Visser, the independent medical examiner. Based on his initial evaluation, Dr. Visser opined that due to the claimant's calcaneal fracture, the claimant was unable to participate in jobs that required frequent walking or prolonged standing (Exhibit 11F/3). Thereafter, when questioned by the claimant's attorney on December 8, 2008, Dr. Visser further clarified his position, and indicated that the claimant's calcaneal fracture had resulted in a major limitation in the claimant's ability to walk or stand for any significant period of time (Exhibit 12F/l).

As such, he surmised that the claimant would have a significant increase in ankle and foot pain if he were to be on his feet for more than three hours of an 8-hour workday. Accordingly, Dr. Visser limited the claimant to three hours or less of standing, walking, climbing and crouching combined in a an 8-hour workday (Exhibit 12F/2). This particular aspect of Dr. Visser's opinion is afforded little weight and was not relied upon when determining the claimant's residual functional capacity.

It making this determination, it is noted that Dr. Visser's examination, which was ordered at the bequest of the claimant's attorney, was not from a treating source and did not involve review of any x-rays or other diagnostic test results pertaining to the claimant's left ankle. Thus, his conclusions regarding the claimant's ankle were based largely on the claimant's subjective complaints, which the undersigned finds lacks credibility.

In that regard, the claimant was non-responsive to many of the questions posed to him at the hearing. Instead, his answers were set forth in something more akin to a "stream of consciousness" approach, which was punctuated by many excuses, unrequested explanations and outright fables about his purported left ankle problems following his alleged February 21, 2006 injury. Further, the record is widely inconsistent with his testimony, as demonstrated herein. Notable is the fact that claimant did not seek any medical treatment for corresponding left ankle symptoms following his alleged injury until he had x-rays taken approximately two years later. Thus, despite receiving intervening medical treatment for other various conditions, almost two years elapsed before he finally opted to seek treatment for left ankle discomfort. Moreover, at that time, x-rays of his left ankle were essentially unremarkable and were negative for any type of fracture (Exhibit 8F/12). Further, by July 9, 2008, the claimant was reportedly able to heel and toe walk and voiced no complaints pertaining to left foot or ankle pain (Exhibit 10F/14-16). By July 23, 2008, Kent R. Biehler, DPM, had reported that the claimant's previously diagnosed ankle sprain had healed simply from the use of custom orthotics (Exhibit 10F/14). Tellingly, the claimant testified that he no longer wears said orthotic because his ankle had "improved". However, the claimant recanted when later led by counsel, at which time he dutifully agreed that his ankle problem was worse than it had been when he was working.

(AR 507).

The ALJ did give some weight to Dr. Visser's opinion regarding plaintiff's neck:

On the other hand, some weight is afforded to Dr. Visser's opinion that the claimant must avoid jobs with occasional or greater neck flexion and repetitive neck rotation (Exhibit 11F/3; 12F/23). In that regard, an MRI of the claimant's cervical spine confirmed a prior fusion and the claimant has intermittently sought treatment for complaints of neck pain. Further, Dr. Visser's clinical findings of radiculopathy

are generally consistent with those of Dr. Kountanis's approximately two years earlier. However, to the extent that Dr. Visser opined that the claimant would be limited to lifting with his left upper extremity a maximum of 15 pounds rarely and 4 pounds or less on a frequent basis and would be unable to use his left hand more than occasionally, his opinion is afforded only limited weight. These restrictions appear to be over broad as the only clinical findings relating to these limitations pertain to some upper left extremity weakness (Exhibit 11F/2). Further, no strength or sensory deficits were noted during the claimant's December 2008 Compensation and Pension General Medical Examination with the VA (Exhibit l7F/13-l4).

(AR 508).

The ALJ reviewed Dr. Visser's opinion consistent with the Court's remand and with the applicable regulations. *See Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 156 (6th Cir. 2009) ("[p]ursuant to the Social Security regulations, the ALJ is required to evaluate every medical opinion and consider the following non-exhaustive factors in deciding what weight to give each opinion: examining relationship, treatment relationship, the extent to which medical signs and laboratory findings support the opinion, the consistency of the opinion with the record as a whole, and the specialization of the doctor rendering the opinion"). Accordingly, plaintiff's claim of error will be denied.

**B.     The ALJ's RFC determination was not supported by substantial evidence.**

**1.     The ALJ failed to consider all plaintiff's impairments and failed to perform a funciton by function analysis.**

Plaintiff contends that the ALJ's RFC determination was in error because the ALJ did not complete a "function-by-function assessment" as required by SSR 96-8p.[3] RFC is a medical

_____

[3] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498

assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d at 530.

"Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Commissioner of Social Security*, 30 Fed.Appx. 542, at 547-548 (6th Cir. 2002) (citations and quotation marks omitted). *See Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 729 (6th Cir. 2013) (an ALJ's RFC assessment complied with SSR 96-8p where "[t]he ALJ fully specified [the claimant's] exertional and nonexertional abilities")(citing *Delgado*). In this instance, the ALJ met the requirements for articulating the RFC determination by reviewing plaintiff's alleged impairments, medical history and functional limitations (AR 502-09), and, accordingly, plaintiff's claim of error will be denied.

  2. **The ALJ made no specific findings regarding the physical demands of plaintiff's past relevant work, as required by SSR 82-62.**

Plaintiff contends that the ALJ did not comply with SSR 82-62 because he did not analyze the actual demands of plaintiff's past work before determining that plaintiff could perform

(6th Cir. 2006), quoting *Wilson*, 378 F.3d at 549 (citations omitted).

that work. While the ALJ found that plaintiff could perform his past relevant work as both a machine operator and a donut fryer, his decision only addressed plaintiff's ability to perform his past work as a machine operator:

> Based on the case in its entirety along with the vocational expert's testimony and considering the claimant's age, educational background, work experience, and residual functional capacity, he is capable of performing his past relevant job as machine operator at the unskilled, light levels as he previously performed it and as performed in the general economy

(AR 509). Given the ALJ's failure to address plaintiff's past work as a donut fryer, the Court construes his decision as limited to finding that plaintiff could only perform his past work as a machine operator.

"The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62. "In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact: . . . A finding of fact as to the physical and mental demands of the past job/occupation. SSR 82-62. *Id.*

The ALJ found that plaintiff had the RFC to perform light work and stand for six hours of an eight-hour workday (AR 505). Given this RFC, plaintiff would not be able to perform his past relevant work as a machine operator as plaintiff described in his work history report, i.e., the machine operator position required plaintiff to be on his feet for eight hours and walking five hours a day (AR 727). During the administrative hearing held on September 9, 2011 (on remand),

the vocational expert (VE) testified that the machine operator jobs required "being on your feet six of eight hours" (AR 559). It is not clear from the record whether this determination was based upon how plaintiff performed his past work as a machine operator or as the machine operator job is performed in the national economy. Despite the conflict between plaintiff's work history report and the VE's testimony, the ALJ did not make an explicit finding regarding the amount of standing involved in plaintiff's past work as a machine operator, either as plaintiff performed it or as it is performed in the national economy.[4] Defining the requirements of plaintiff's past machine operator work is a critical question in this case, given that plaintiff was found not disabled at step four because he could perform this work. Based on this record, the ALJ's finding that plaintiff could perform his past work as a machine operator is not supported by substantial evidence. Accordingly,

---

[4] The Court notes that the ALJ's decision did not accurately reflect the VE's testimony with respect to plaintiff's past relevant work, specifically where the ALJ stated:

> The vocational expert responded to a hypothetical question regarding whether an individual of the claimant's age, education, past relevant work experience and residual functional capacity as determined could perform his past relevant work. The vocational expert testified that such an individual is not precluded from performing his past relevant work as machine operator *both as he performed it and as it is normally performed in the national economy*.

(AR 509) (emphasis added). Contrary to the ALJ's decision, the hearing transcript does not include testimony in which the VE stated that plaintiff could perform his past relevant work as a machine operator "both as he performed it and as it is normally performed in the national economy." In a hypothetical question posed to the VE by the ALJ, the RFC included the ability to stand for up to six hours in an eight-hour workday (AR 557-58). The VE testified that plaintiff's past relevant work as a machine operator and donut fryer would fit within that RFC (AR 558). In response to a follow-up question by plaintiff's attorney, the VE agreed that both the donut fryer and machine operator jobs required "being on your feet six of eight hours" (AR 559). The VE, however, did not elaborate on whether this standing requirement applied to plaintiff's work as he performed it or as the work is normally performed in the national economy. When asked if plaintiff could work those jobs if he could only stand five out of eight hours, the VE apparently relied on plaintiff's job as he performed it, testifying that the jobs would be eliminated "because in the work reports [plaintiff] filled out, he essentially had to stand more than five out of the eight hours per day" (AR 560). This testimony is confusing, because if the VE relied on standing requirements in plaintiff's work report, then she would have found that plaintiff could not perform his past relevant work as a machine operator, because such work required him to stand eight hours per day (AR 727).

this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On

remand, the Commissioner should make specific findings regarding the standing and walking

requirements for plaintiff's past work as a machine operator.

### C.    The hypothetical questions posed by the ALJ did not accurately portray plaintiff's mental and physical limitations.

It is the claimant's burden at the fourth step of the sequential evaluation to show an

inability to return to any past relevant work.  *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980).

To support a finding that a claimant can perform his or her past relevant work, the Commissioner's

decision must explain why the claimant can perform the demands and duties of the past job as

actually performed or as ordinarily required by employers throughout the national economy.  *See*

*Studaway v. Secretary of Health & Human Services*, 815 F.2d 1074, 1076 (6th Cir.1987); *see also*

20 C.F.R. § 404.1565.  A VE's testimony is not required when the ALJ determines that a claimant

is not disabled at step four of the sequential evaluation.  *See Banks v. Massanari*, 258 F.3d 820, 827

(8th Cir.2001) (vocational expert testimony is not required until step five of the sequential analysis);

*Parker v. Secretary of Health and Human Services*, 935 F.2d 270, 1991 WL 100547 at *3 (6th

Cir.1991); *D'Angelo* , 475 F.Supp.2d at 724.  However, the ALJ may use a VE's services in

determining whether a claimant can perform his past relevant work.  *See* 20 C.F.R. § 404.1560(b)(2)

(a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical

and mental demands of a claimant's past relevant work, either as the claimant actually performed

it or as generally performed in the national economy").  *See, e.g., Dukes v. Barnhart*, 436 F.3d 923,

928 (8th Cir.2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding

whether the claimant can perform his past relevant work at step four of the evaluation); *D'Angelo*, 475 F. Supp.2d at 724.

Here, the ALJ posed hypothetical questions to the VE as to whether plaintiff could perform his past relevant work as a machine operator (AR 557-59). However, as discussed, the ALJ did not make a finding of fact as to the demands of plaintiff's past work as a machine operator. Given this discrepancy in defining the demands of plaintiff's past relevant work, the hypothetical question was flawed. On remand, the Commissioner should determine the physical demands of plaintiff's past work as a machine operator and re-evaluate whether he can perform this past work.

**D.      The ALJ improperly rejected plaintiff's testimony.**

Plaintiff set forth a brief argument, in which he apparently contends that the ALJ improperly evaluated his credibility based either entirely or almost entirely upon plaintiff's ability to perform a number of daily activities. Plaintiff's Brief at p. 18. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew,

resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The record reflects that the ALJ discounted plaintiff's credibility based on inconsistencies in the medical records, "the general lack of medical care for the allegedly disabling ankle injury," plaintiff's "inconsistent and contradictory testimony and statements", and plaintiff's daily activities (AR 502-09). Furthermore, the ALJ could consider plaintiff's activities of daily living in evaluating his credibility. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). Plaintiff presents no compelling reason to disturb the ALJ's credibility determination. Plaintiff's claim of error will be denied.

### E. Substantial evidence does not support the ALJ's findings as to plaintiff's severe impairments.

#### 1. Additional severe impairments

Plaintiff contends that the ALJ erred by failing to find that plaintiff's alleged arthritis and broken heel bone constituted severe impairments. A "severe impairment" is defined as an

impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* Accordingly, plaintiff's claim of error will be denied.

### 2. The ALJ mischaracterized plaintiff's ankle injury

Plaintiff contends that the ALJ's finding that plaintiff had a severe impairment of a "left ankle sprain" is incorrect. Rather, plaintiff contends that there were two injuries to his ankle. First, plaintiff fractured his left calcaneous (heel bone) in the 1990's. Second, plaintiff re-injured it when he jumped a fence. Plaintiff's Brief at p. 18. Plaintiff contends that the ALJ's reference to the left foot problem as a "sprain" caused confusion in the record. *Id.* at p. 19. For his part, the ALJ found that the medical record showed at most a sprain of the left ankle:

> While the medical records reference an unverified remote history of left calcaneus fracture per the claimant's verbal history, x-rays of his left foot dated January 23,2008 were negative for any evidence of remote or acute fractures or destructive lesions and evidenced only mild osteoporosis (Exhibit 8F/11-12). Thus, the only verifiable objective documentation of a left foot or left ankle condition is that of a left ankle sprain, which has reportedly been remedied by a custom orthotic (Exhibit 10F/14). Thus, the undersigned specifically does not find medical evidence supportive of a left lower extremity calcaneal fracture, as the records supporting the occurrence of, and treatment for, such condition were sought but not obtained (Exhibit 32E).

*       *       *

While the record reveals that the claimant was diagnosed with a left ankle sprain by a VAMC podiatrist, it was noted by that physician that this condition was essentially resolved by use of a custom orthotic. Nevertheless, the record reveals that the claimant has demonstrated decreased inversion and eversion of the left foot (Exhibit 10F/14; 11F/3). As such, the claimant is limited occasional climbing of ramps or stairs, and no climbing ladders, ropes or scaffolds. He can engage in occasional balancing, stooping, kneeling, crouching and crawling. In making this determination, it is noted that clinicians have consistently reported that the claimant had a normal gait and was able to walk on his heels and his toes (Exhibits 3F/3; 11F/3; 13F/18, 83; 17F/8), and Dr. Kountanis noted that he was able to climb steps and squat without assistance (Exhibit 3F/3).

(AR 503, 506). While plaintiff's counsel attempted to obtain records for the alleged fracture that occurred in the 1990's, the hospital no record of treating that injury (AR 769-71). The ALJ's decision with characterizing plaintiff's left ankle condition as a sprain is supported by substantial evidence. Accordingly, plaintiff's claim of error will be denied.

### F.    New evidence supports a sentence six remand.

Plaintiff has obtained new evidence with respect to his left foot since the ALJ entered his decision denying benefits and seeks a sentence six remand to present this new evidence to the Commissioner. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v.*

*Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir. 2012).

Plaintiff's sentence six remand is based upon a post-decision examination and x-ray by Thomas Redmond, D.P.M. (AR 428-40). In a statement dated September 5, 2012, Dr. Redmond opined that plaintiff's x-ray showed evidence of an old fracture of his left foot which would be consistent with a fracture that occurred in the late 1990's (AR 429-31). The doctor stated that the old fracture was not in the ankle *per se*, but in the subtalar joint immediately beneath the ankle (AR 429-30). Plaintiff contends that this new evidence should be considered because the medical records regarding the original treatment of plaintiff's left heel fracture no longer exist (AR 769-70).

The Court concludes that this evidence is material because it helps to explain the condition of plaintiff's left foot and appears to corroborate plaintiff's claim that he had an old fracture. Plaintiff has shown good cause for not presenting this evidence in a timely manner. Plaintiff's counsel attempted to obtain the original record of plaintiff's treatment for the fracture, but that record no longer exists. The old fracture was only discovered after plaintiff sought treatment from Dr. Redmond for a painful left heel on December 21, 2011 (AR 438-40). Accordingly, the Commissioner should review this new evidence on remand.

## IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should determine the physical demands of plaintiff's past work as a machine operator and re-evaluate whether he can perform this past work. In addition, the Commissioner should re-evaluate the medical evidence in light of Dr. Redmond's records. A judgment consistent with this opinion will be issued forthwith.


Dated:  March 28, 2014                    /s/ Hugh W. Brenneman, Jr.
                                          HUGH W. BRENNEMAN, JR.
                                          United States Magistrate Judge